IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| AMY N. W., | CV 25-20-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review

of a decision by the Commissioner of Social Security denying her application for

disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.

§§ 401 et seq.

## I.    **Procedural Background**

Plaintiff protectively filed an application for Title II disability benefits on

September 30, 2021, alleging disability since November 1, 2019. (Tr. 201-202).[1]

Plaintiff later amended her alleged onset date to May 29, 2021. (Tr. 46-47, 384)

Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after

---

[1] Citations to the certified administrative record filed by the Commissioner (Doc. 5) are designated as "Tr." and refer to the Bates-stamped page numbers assigned by the Social Security Administration rather than the page numbers assigned by the Court's electronic docketing system.

an administrative hearing. (Tr. 18-42, 110-114, 121-127). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated April 1, 2024, the agency's final decision for purposes of judicial review. (Tr. 5-10). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.    Legal Standards

### A.    Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an

ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

**B.      Disability Determination**

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(1)(A), 423(d)(2)(A); *see also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act. At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

4

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.   **Discussion**

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff meets the insured status requirement of the Social Security Act through March 31, 2027, and had not engaged in substantial gainful activity since May 29, 2021, the amended alleged onset date. (Tr. 23). At step two, the ALJ found that Plaintiff had the following severe impairments: cerebral aneurysm rupture with subarachnoid hemorrhage, migraines, major depressive disorder, and generalized anxiety disorder. (Tr. 24).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment described in the Listing of Impairments 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (Tr. 25).

The ALJ then found that Plaintiff had the residual functional capacity (RFC) to perform light work with several limitations including:

> [S]he can frequently balance, stoop, kneel, crouch, or crawl, can frequently climb stairs or ramps, and can occasionally climb ladders, ropes, or scaffolds. The claimant can occasionally be exposed to vibrations, unprotected heights and/or moving machinery parts. She can never be exposed to strobe lights or to flashing lights, requires a moderate noise work environment, as defined in the DOT and SCO, and can have occasional exposure to dust, noxious odors, or fumes, and/or poor ventilation, as defined in the DOT and SCO. The claimant is able to understand and remember simple instructions, make simple work-related decisions, carry out simple instructions, and cannot perform work which requires a specific production rate, such as assembly line work or hourly quota work.

(Tr. 27). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 35). Proceeding to step five, the ALJ found based on the vocational expert's testimony that other jobs exist in significant numbers in the national economy that Plaintiff could perform, including work as a mail sorter, routing clerk, and folding machine operator. (Tr. 36).

Plaintiff argues the ALJ's decision is not supported by substantial evidence. She contends the ALJ did not provide clear and convincing reasons for discounting

her subjective symptom testimony as to the intensity, persistence, and limiting effects of her migraine headaches and fatigue.

### A.    Subjective Symptom Testimony

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson*, 95 F.4th at 1199 (citation omitted). If the claimant meets this initial burden, and there is no evidence of malingering, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Ferguson*, 95 F.4th at 1199.

The clear and convincing standard requires the ALJ to "show his work" by providing a "rationale … clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (The ALJ must "specifically identify" which portions of the

claimant's testimony the ALJ finds "not to be credible" and "explain what evidence undermines that testimony."). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). In addition, the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492. This means the court "may not take a general finding" by the ALJ "and comb the administrative record to find specific" evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494.

If the ALJ provides at least one valid reason to discount the claimant's testimony, any error in the remaining reasons is harmless. *See e.g. Joshua P. Kijakazi*, 2021 WL 4330858, at *3 (D. Or. Sept. 23, 2021) (citing *Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's adverse credibility determination because the ALJ "provided at least one clear and convincing reasons supported by substantial evidence for rejecting [it] as not credible") and *Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (If the ALJ provides "at least one valid reason to discount [a claimant's symptom] testimony, error in the remaining reasons is harmless"). "There is, however, one important caveat to this rule: A lack of supporting medical evidence cannot be the only valid reason provided for

discounting a claimant's testimony." *Joshua P.*, 2021 WL 4330858, at *3 (citing *Valdez v. Berryhill*, 746 F.App'x 676, 677 (9th Cir. 2018) (stating that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason"). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson*, 95 F.4th at 1199 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)).

Here, the ALJ found that Plaintiff met her initial burden under the two-step process because she produced evidence of medically determinable impairments—including a cerebral aneurysm rupture and migraine headaches—that could reasonably be expected to cause the alleged symptoms. Accordingly, and because there is no evidence of malingering, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Plaintiff argues the ALJ failed to meet this burden and did not offer any clear and convincing reasons for rejecting her testimony as to the intensity, persistence, and limiting effects of her migraine headaches and fatigue.

Plaintiff had been working as an insurance adjuster for more than 20 years when she suffered a cerebral aneurysm on November 2, 2019. (Tr. 228, 234, 390-420). In her disability report, Plaintiff stated that she returned to work for a time

with various accommodations—including a modified schedule—but was unable to handle the demands of her job and stopped working on June 1, 2021. (Tr. 234). Plaintiff has reported that the residual symptoms of her aneurysm include headaches, migraines, and fatigue. (Tr. 59-65, 251, 261-62, 276-78, 280-81).

In March 2022, Plaintiff completed a headache questionnaire on which she stated she has headaches and migraines three to four times a week, depending on her level of activity. (Tr. 261). She indicated that her headaches are triggered by certain lights, sounds, overstimulation, brain usage, heavy thinking, and straining her eyes. (Tr. 261). Plaintiff wrote that her migraines last from four hours to three days, during which time her activities are limited, and she lies down in a dark quiet room with her eyes closed. (Tr. 261-262). In November 2022, Plaintiff completed a pain questionnaire similarly stating that she gets migraines two to three times a week that last for three hours to three days and cause a stabbing pain. (Tr. 276-77). She wrote that her migraines are triggered by lights, sound, and activities, and she takes Ubrelvy for pain. (Tr. 276).

At her administrative hearing on March 4, 2024, Plaintiff testified that she has headaches regularly, at least two or three times a week. (Tr. 59). She explained that her headaches can be affected by lighting and physical exertion and can develop into migraines. (Tr. 59). Plaintiff testified that three or four times a week she experiences headaches that cause her to need to lie down for more than an hour

or two. (Tr. 60). She said her headaches are one of the big reasons why she sleeps so much in the afternoon, and she uses ice packs on her head to relieve the pain. (Tr. 60). Plaintiff testified that her prescription medication is expensive, and she uses it only as a last resort. (Tr. 61). As to fatigue, Plaintiff testified that she can do things for about two hours and then it is like hitting a wall and she needs to lie down for as long as her body needs it, usually from one to three hours. (Tr. 61).

The ALJ summarized Plaintiff's testimony and found that while her "medically determinable impairments could reasonably be expected to cause the allege symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 28). The ALJ followed this boilerplate statement with a lengthy summary of the medical evidence, beginning with records documenting the emergency treatment Plaintiff received for the aneurysm she experienced in November 2019. (Tr. 28-33). The ALJ noted that Plaintiff returned to work in October 2020—at which time she reported ongoing headaches, difficulty with concentration and attention, and anxiety—and stopped working in May 2021. (Tr. 28). The ALJ then summarized medical records spanning the period from August 2021 to December 2023. (Tr. 28-33).

For example, the ALJ summarized treatment notes from PA-C Madelyn Boyle, a neurology physician assistant who saw Plaintiff a number of times between October 2022 and December 2023 for follow up on her aneurysm, migraine headaches, fatigue, and cognitive dysfunction. (Tr. 30-33, 1179-1182, 1959-1971). The ALJ acknowledged that Plaintiff complained of ongoing painful headaches, fatigue, and other aneurysm-related symptoms in October 2022, and then listed PA-C Boyle's unremarkable neurological examination findings, including: alert and oriented x3, intact verbal expression and comprehension, no right-left disorientation or hemi-neglect, full ocular motility, normal facial sensation, normal speech but with moments of hesitant or stuttering speech, normal motor examination, and normal gait. (Tr. 30). The ALJ recited similar examination findings by PA-C Boyle in April 2023 and August 2023 (Tr. 31, 32).

The ALJ additionally summarized records from family medicine physician assistant Terrence Austin, who saw Plaintiff for annual exams in August 2021, August 2022, and July 2023. (Tr. 28-30). The ALJ noted that in August 2021, Plaintiff had difficulties with speech, mental processing and recurrent headaches, and then listed PA-C Austin's unremarkable physical and neurological examination findings, including: no major musculoskeletal system deformities, intact range of motion, alert and oriented x3, normal motor function and gait, no focal deficits, appropriate speech and behavior, and normal judgment. (Tr. 28-29).

12

The ALJ recited similar examination findings by PA-C Austin at Plaintiff's annual exams in August 2022 and July 2023. (Tr. 30, 32).

The ALJ also summarized medical records from psychologist Dr. Amy Davis, who saw Plaintiff several times between May 2022 and December 2023. (Tr. 29, 1933-1949). The ALJ noted Plaintiff reported in May 2022 that she struggled with fatigue, daily headaches, and difficulty concentrating, but recited Dr. Davis's normal examination findings, including normal speech and thought process, and appropriate affect. (Tr. 29, citing Tr. 1934, 1936-1937, 1947-49).

Following his summary of the medical evidence, the ALJ found "that the Functions Reports and the [Plaintiff's] testimony… relating to the symptoms and limitations experienced by the [Plaintiff] are not consistent with and not supported by the objective clinical and diagnostic findings." (Tr. 35). The ALJ did not identify any other reason for rejecting Plaintiff's testimony as to the severity of her aneurysm-related symptoms, including her migraine headaches and fatigue.

The Ninth Circuit has held that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But while an ALJ may rely on "*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ may not discredit a

claimant's subjective complaints solely because they are not *corroborated by* the objective evidence. *Ferguson*, 95 F.4th at 1200 (citing *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020). "Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony." *Ferguson*, 95 F.4th at 1200 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-38, 1040 (9th Cir. 2007)). It is not enough for the ALJ to simply summarize the medical evidence and make a general statement that the record undermines the claimant's testimony. *N.N. v. O'Malley*, 2024 WL 4345582, at *13 (N.D. Cal. Sept. 30, 2024) (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) and *Brown-Hunter*, 806 F.3d at 490-91). Rather, the ALJ must identify, with specificity, the inconsistent portions of the medical record, "link that evidence to the aspects of the testimony that are deemed not credible, and explain why the two are incongruent." *N.N.,* 2024 WL 4345582, at *13 (citing *Lambert*, 980 F.3d at 1277).

Here, the ALJ's general finding that Plaintiff's statements relating to her "symptoms and limitations" were "not consistent with and not supported by the objective clinical and diagnostic findings" is not sufficient. (Tr. 35). For one thing, many of the medical records included in the ALJ's summary do not address Plaintiff's aneurysm-related symptoms, such as headaches and fatigue, and instead

14

address unrelated matters such as a wrist injury (Tr. 30), tendonitis (Tr. 31), eustachian tube dysfunction (Tr. 31), a car accident (Tr. 32), and treatment for a tumor on Plaintiff's liver (Tr. 32, 33). While a number of the remaining medical records summarized by the ALJ—such as those provided by PA-Cs Boyle and Austin—do relate to Plaintiff's ongoing aneurysm-related symptoms, the ALJ did not connect their examination findings to Plaintiff's testimony. Although the ALJ found that "[t]reatment notes in the record do not sustain the [Plaintiff's] allegations of disabling pain," he did not identify what treatment notes he was referring to or point to any specific inconsistencies between Plaintiff's testimony and the medical evidence. (Tr. 35).

Assuming—as argued by the Commissioner (Doc. 9 at 3)—that the ALJ meant to discredit Plaintiff's testimony as to the frequency and severity of her headaches and fatigue, the ALJ did not explain how the examination findings he summarized in his decision contradict Plaintiff's testimony that she has headaches three or four times a week that require her to lie down, and can only do things for two hours at a time before needing to rest due to fatigue. *See Ferguson*, 95 F.4th at 1198, 1200 (finding the ALJ failed to explain how the absence of neurological defects and other normal examination findings were inconsistent with the claimant's testimony that he had debilitating headaches lasting as long as two days, as frequently as twice or three times a week); *Ozuna v. Commissioner*, 2026 WL

252039, at *2 (E.D. Cal. Jan. 30, 2026) (following *Ferguson* and finding the ALJ's discussion of "normal" examination findings did not suffice to discount the claimant's testimony about debilitating back and leg pain because the discussion did "not specifically, clearly, and convincingly connect the examination findings to [the claimant's] testimony"). At most, the ALJ found that the objective examination findings he listed in his summary of the medical record did not fully corroborate Plaintiff's testimony.  But the ALJ did not provide any other reasons for discounting Plaintiff's testimony, and the lack of corroborating evidence is not, standing alone, a sufficient basis for rejecting subjective symptom testimony. *See Coleman*, 979 F.3d 751, 756 (9th Cir. 2020).

For the reasons discussed above, the Court finds that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff subjective symptom testimony about the severity of her migraine headaches and fatigue.

### B.    Vocational Expert

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th

Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's testimony that the claimant could perform other work existing in the national economy has no evidentiary value. *Embrey*, 849 F.2d at 422.

As discussed above, the Court has determined that the ALJ did not provide adequate reasons for discrediting Plaintiff's testimony as to the severity and limiting effects of her impairments. This error may have affected the ALJ's hypothetical, and in turn, the undermined the vocational expert's testimony that Plaintiff could perform other work existing in the national economy.

## C.    Remand

Plaintiff requests the Court remand this matter for an award of benefits. (Doc. 7 at 17). The Ninth Circuit has directed district courts to remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues to be resolved. The ALJ failed to provide specific, clearing and convincing reasons for discounting Plaintiff's testimony as to

the severity and limiting effects of her migraine headaches and fatigue. On this record, the Court cannot conclude the ALJ's error was harmless. *See Brown-Hunter*, 806 F.3d at 492 (noting that "[i]f the ALJ fails to specify [the] reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully" and "such error will usually not be harmless"). Accordingly, remand for further administrative proceedings is the proper remedy. On remand, the ALJ should reevaluate Plaintiff's testimony as to the severity and limiting effects of her migraine headaches and fatigue, and consider whether additional limitations are properly incorporated into the residual functional capacity assessment.

## IV.   Conclusion

For the reasons discussed above,

IT IS ORDERED that the Commissioner's decision is REVERSED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 23rd day of March, 2026.

_____
Kathleen L. DeSoto
United States Magistrate Judge